## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CIC PLUS, INC.,

    Plaintiff/Counter-Defendant,

    v.

DARREN DEXHEIMER,

    Defendant/Counter-Plaintiff.

No. 22 C 1523

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff/Counter-Defendant CIC Plus, Inc.'s Motion to Dismiss Dexheimer's Counterclaims [ECF No. 15]. For the reasons set forth below, CIC's Motion to Dismiss Dexheimer's Counterclaims [ECF No. 15] is granted in part without prejudice and denied in part.

## BACKGROUND

Defendant/Counter-Plaintiff Darren Dexheimer ("Dexheimer") was employed by Plaintiff/Counter-Defendant CIC Plus, Inc. ("CIC") as a remote software developer for approximately 13 years from 2008 to 2021. When he was hired in 2008, it is not disputed that Dexheimer and CIC entered into an employment agreement (hereinafter, the "2008 Agreement") that provided, among other things, Dexheimer's compensation would include a 3% share of CIC's profits. *See* Verified Complaint for Declaratory Judgment ("Complaint") [ECF No. 1-1], Ex. A at ¶¶ 6-7. CIC alleges that the parties later re-negotiated the 2008 Agreement and entered into a superseding employment agreement in 2015 (hereinafter, the "2015 Agreement"), which altered

Dexheimer's compensation package, including the profit sharing component, so that Dexheimer was paid based on an annual compensation plan that raised his salary and provided a performance-based bonus. *See* Complaint [ECF No. 1-1], Ex. B at ¶¶ 9-14).

After the employment relationship ended in 2021 (the parties dispute whether Dexheimer resigned or not), Dexheimer requested CIC pay him 3% of CIC's profits from 2015 to 2021 pursuant to the 2008 Agreement. CIC refused that request which laid the groundwork for this lawsuit. Dexheimer disputes CIC's version of the facts, particularly that the parties entered into the 2015 Agreement and re-negotiated his compensation. *See* Dexheimer's Resp. to Motion to Dismiss [ECF No. 25], at 1-2. Specifically, Dexheimer "disputes the authenticity of the [the 2015 Agreement] . . . because the signature is suspect and he has no recollection of receiving the document or agreeing to its terms." *Id.* at 5; *see also* Answer, Affirmative Defenses, and Counterclaims [ECF No. 11], at ¶ 2 (stating the 2015 Agreement "has a signature that is not the signature Dexheimer used to execute documents"). Dexheimer also says he never forfeited his right to a 3% share of CIC's profits and the purported 2015 Agreement does not say otherwise. *See* Answer [ECF No. 11], at ¶ 2.

CIC filed this action for declaratory relief seeking a declaration that the 2015 Agreement governs the parties' contractual relationship, and that CIC does not owe Dexheimer 3% of its profits from 2015-2021. *See generally* Complaint [ECF No. 1-1]. In response to CIC's complaint, Dexheimer filed his answer with ten affirmative defenses and also included three counterclaims for breach of contract, bad faith, and

unjust enrichment. *See generally* Answer, Affirmative Defenses, and Counterclaims [ECF No. 11]. CIC's complaint seeks relief based on the parties' 2015 Agreement while Dexheimer's counterclaims are based on the 2008 Agreement. CIC attached both the 2008 and 2015 Agreements to its complaint, but Dexheimer attached only the 2008 Agreement to his answer and counterclaims. Dexheimer does not mention the 2015 Agreement in his counterclaims.

CIC filed a Motion to Dismiss Dexheimer's Counterclaims [ECF No. 15] and a Motion to Strike Dexheimer's Affirmative Defenses [ECF No. 16]. In this Memorandum Opinion and Order, the Court addresses CIC's Motion to Dismiss Dexheimer's Counterclaims [ECF No. 15]. At base, CIC argues that the plain terms of the 2015 Agreement bar Dexheimer's counterclaims, but Dexheimer disputes the validity of the 2015 Agreement in his answer and contends in his counterclaims that the 2008 Agreement, in particular the compensation terms of the 2008 Agreement, governs the parties' current dispute.

## ANALYSIS

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint, in this instance Dexheimer's counterclaims, not its factual sufficiency. FED. R. CIV. P. 12(b)(6); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001). The court will grant a motion to dismiss only if "it appears beyond doubt that the [counterclaimant] can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). In making its determination, the court

must assume the truth of the facts alleged in the counterclaims, construe allegations liberally, and view them in the light most favorable to the counterclaim plaintiff. *See Centers*, 398 F.3d at 933; *Cozzi Iron & Metal v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

At the Rule 12(b)(6) stage, a court is permitted to consider exhibits attached to a complaint or counterclaim, but when an exhibit conflicts with the allegations of the complaint or counterclaim, the exhibit typically controls. *Centers*, 398 F.3d at 933. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." FED. R. CIV. P. 10(c). Typically, a court would not consider documents extrinsic to the challenged pleading in a motion to dismiss. *See* FED. R. CIV. P. 12(d); *Swanson v. Bank of Am., N.A.*, 566 F.Supp.2d 821, 823 (N.D. Ill. 2008). The challenged pleading in this instance are Dexheimer's counterclaims. The Seventh Circuit instructs, however, that a "district court may consider extrinsic exhibits if the documents are both referred to in the complaint and are also central to the . . . claims." *Swanson*, 566 F.Supp.2d at 823 (citing *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002)). To be considered at the Rule 12(b)(6) stage, the documents must also be indisputably authentic. *Id.*

Here, the relevant exhibits are the 2008 Agreement and 2015 Agreement.[1] Both documents clearly are central to the parties' dispute and the claims and counterclaims at issue in this lawsuit. The 2015 Agreement, on which CIC relies, is not specifically referenced in Dexheimer's counterclaims, but he denies the validity

---

[1] As noted above, CIC attached both the 2008 and 2015 Agreements to its complaint, but Dexheimer attached only the 2008 Agreement to his answer and counterclaims.

4

of the 2015 Agreement in his answer.[2] Although Dexheimer does not explicitly reference the 2015 Agreement in his counterclaims, he does implicitly acknowledge it with his statements, among others, that "CIC did not amend the terms of this compensation agreement by mutual assent" and "CIC falsely claims Dexheimer renegotiated his compensation rate." *See* Counterclaims [ECF No. 11], at ¶¶ 5.13, 5.18. More specifically,

CIC argues Dexheimer cannot deny the validity of the 2015 Agreement and contends that Dexheimer never denied he signed the 2015 Agreement. However, there is no allegation in CIC's complaint that Dexheimer signed the 2015 Agreement, so Dexheimer was not required to admit or deny a non-existent allegation. In any event, in his answer, Dexheimer stated that "has no recollection of the 2015 [Agreement]," that it bears "a signature that is not the signature Dexheimer used to execute documents," and that "it was not supported by consideration." *See* Answer [ECF No. 11], at ¶ 2. CIC cites case law that a lack of recollection is insufficient to create a dispute as to either the substance or the authenticity of a document. *U.S. v. Romero*, 2017 WL 61025, at *3 (N.D. Ill. Jan. 5, 2017). That may or may not be true, but the issue here is not simply a lack of recollection. Dexheimer expressly challenges the authenticity of the electronic signature on the 2015 Agreement and that calls into

---

[2] *See* Answer [ECF No. 11], at ¶ 20 ("Admitted that the 2015 Agreement is not referenced in Dexheimer's Complaint, and denied as to all other facts to include the inference that there was an 'Agreement.' The 2015 document is not a valid contract because there was no meeting of the minds, no consideration, and was otherwise fraudulently induced. The 2015 document has no bearing on CIC's obligation to pay Dexheimer 3% profits because it does not specify any compensation nor is it a compensation agreement.").

question the authenticity of the document. *See* Answer [ECF No. 11], at ¶ 2. Although CIC accuses Dexheimer of being coy in not directly denying that he signed the 2015 Agreement, that is, in the Court's view, at best splitting hairs and at worst a misreading of the pleadings. Giving Dexheimer the benefit of the doubt as is required at this stage of the case, Dexheimer appears to be challenging the authenticity, validity, and enforceability of the 2015 Agreement.[3]

CIC's tendering of an affidavit from its general counsel, Mitchell Rose, in which Rose avers that he received the fully executed 2015 Agreement from Dexheimer on January 7, 2015, does not close the deal for CIC in the context of a Rule 12(b)(6) motion to dismiss. *See* Affidavit of Mitchell Rose in Support of Motion to Dismiss [ECF No. 15], Ex. A at ¶ 2. It just confirms there is a factual dispute here as to whether Dexheimer executed the 2015 Agreement and whether that document governed the parties' employment relationship from 2015 forward instead of the 2008 Agreement. Neither Rose's affidavit nor CIC's other arguments persuade the Court that it must flatly reject Dexheimer's challenge to the validity of the 2015 Agreement at this early stage of the proceedings as CIC strenuously argues the Court should do as a matter of law.[4]

---

[3] Moreover, Dexheimer does explicitly deny CIC's allegation that "[i]n January 2015, CIC and Dexheimer entered into a new Employment Agreement (the '2015 Agreement," attached as Exhibit B.)." *See* Complaint [ECF No. 1-1], at ¶ 10; Answer [ECF No. 11], at ¶ 10.

[4] The Court notes that while CIC argues Dexheimer returned the executed 2015 Agreement to Rose "via email" (CIC's Reply in Support of Its Motion to Dismiss [ECF No. 32], at 4), Rose's affidavit does not mention that he received the executed document via email (Rose Affidavit in Support of Motion to Dismiss [ECF No. 15], Ex. A at ¶ 2), and that purported email is not a part of the record on the pending Motion to Dismiss [ECF No. 15] nor would it

With the above discussion as prologue, the Court now turns to Dexheimer's counterclaims. Dexheimer has asserted three counterclaims: breach of contract, bad faith, and unjust enrichment. At the motion to dismiss stage, it is well-settled law that a court must assume the truth of the facts alleged in the counterclaims, construe allegations liberally, and view them in the light most favorable to the counterclaim plaintiff. *See* FED. R. CIV. P. 12(b)(6). With that in mind, this Court cannot and will not resolve at this stage in the litigation the issue of which employment contract was the operative agreement from 2015 until 2021 when Dexheimer's employment with CIC ended, what his terms of compensation were during that same time period, or whether the 2015 Agreement is authentic and valid. CIC maintains this case is clear cut and simple, but that is not apparent from the pleadings at this stage of the case, when the allegations in the pleadings are assumed to be true. The parties will have an opportunity to establish through discovery, if they can, which of their conflicting versions of the facts bear out. At the end of the day, CIC may (or may not) prevail on its argument that the plain terms of the 2015 Agreement bar Dexheimer's counterclaims, but this Court cannot and will not make that determination at this time.[5] Therefore, the Court denies CIC's motion to dismiss Dexheimer's first counterclaim for breach of the 2008 Agreement.

---

be proper to include such evidence extrinsic to the pleadings in the context of a Rule 12(b)(6) motion.

[5] For example, CIC points out that the 2015 Agreement contains an integration or merger clause that provides, in relevant part: "This Agreement is the complete and entire understanding between the parties regarding the employment relationship and supersedes all prior discussions and agreements." *See* Complaint [1-1], Ex. B, at ¶ 10.4. But, as discussed above, Dexheimer contests whether he signed the document that contains that clause or

As to the second counterclaim, Dexheimer asserts a claim for bad faith. Outside of a narrow exception relating to certain duties of an insurer that are not applicable in this case, it is well-settled in Illinois that there is no independent tort or cause of action for "bad faith and unfair dealing." *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131-32 (Ill. 2001) ("[T]he covenant of good faith and fair dealing [is] a rule of [contract] construction, rather than an independent source of tort liability...."); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996) ("This contractual covenant [of good faith and fair dealing] is not generally recognized as an independent source of duties giving rise to a cause of action in tort."); *7-Eleven, Inc. v. Dar*, 757 N.E.2d 515, 523 (Ill. App. Ct. 2001) (reversing arbitration award improperly based on "breach of the covenant of good faith and fair dealing," because there is no such cause of action).

---

agreed to be bound by its terms. On the other hand, Dexheimer points out that the 2015 Agreement provides: "Employee's salary or other compensation will be set forth more fully in a separate compensation plan." *Id.* at ¶ 4.1. He also says CIC points to no separate compensation plan for Dexheimer that was ever adopted or agreed (other than that "Dexheimer's annual compensation plan was addressed and agreed annually, typically at the beginning of June, when his prospective salary (including any raise) and his bonus for the previous year were determined"). *See* Complaint [ECF No. 1-1], at ¶ 13. So, Dexheimer argues, this supports his argument that the 2015 Agreement did not supplant the compensation system laid out in the 2008 Agreement. These are not disputes that can be decided in the context of a Rule 12(b)(6) motion. Further, the Court notes, purely as an observation with no legal significance as of now, that the record at this early juncture in the case contains three documents that purport to bear Dexheimer's signature and each of those signatures appear to the untrained eye to be different. *Compare* Dexheimer's purported digital signature on the 2010 Amendment to Employment Agreement attached to CIC's Reply in Support of Its Motion to Dismiss Dexheimer's Counterclaims [ECF No. 32], at 19, *with* Dexheimer's admitted handwritten signature on the 2008 Agreement, [ECF No. 1-1], Ex. A, at 6, and his purported signature on the 2015 Agreement, [ECF No. 1-1], Ex. B, at 8.

In his response to CIC's motion, Dexheimer does not dispute Illinois law does not recognize an independent cause of action for bad faith. *See* Dexheimer's Resp. to Motion to Dismiss [ECF No. 25], at 11. But he attempts to re-cast his counterclaim as a breach of the covenant of good faith and faith dealing in the context of his breach of contract claim. Such a claim, though, would be part and parcel of his first counterclaim for breach of contract, and would not support a separate or independent claim for relief in the way Dexheimer has pled it, so that argument does not save Dexheimer's pleading. Moreover, Dexheimer does not actually allege any specific breach of the covenant of good faith or fair dealing in his counterclaims.

The Court is not persuaded by any of Dexheimer's additional arguments that his counterclaim for bad faith must stand, such as his argument that he was an at-will employee or that CIC owed him a fiduciary duty because the 2008 Agreement created some sort of partnership agreement between himself and CIC. None of these arguments are supported by the factual allegations set forth in Dexheimer's counterclaims. There are no facts alleged in his counterclaims that would give rise to a claim that CIC owed Dexheimer a fiduciary duty that was breached or that he and CIC had some sort of a partnership agreement. These claims are not legally viable based on the allegations in his counterclaims. Therefore, the Court grants CIC's motion to dismiss Dexheimer's second counterclaim for bad faith without prejudice. It is not clear to the Court if there are any facts that Dexheimer could assert to support a claim for breach of the implied covenant of good faith and fair dealing in connection with his contract claim or for breach of fiduciary duty, but Dexheimer is

given leave to replead and attempt to cure the deficiencies discussed here, if he can do so, on or before December 9, 2022.

In his third counterclaim, Dexheimer asserts a claim for unjust enrichment. Specifically, Dexheimer alleges that "CIC has been unjustly enriched by accepting work performed by Dexheimer while paying less than the agreed upon rate for such work." *See* Counterclaims [ECF No. 11], at ¶ 5.34. Unjust enrichment is "an equitable remedy based on a contract implied in law. To recover, a plaintiff must show that a defendant voluntarily accepted a benefit that would be inequitable to retain without payment." *Pepper Constr. Co. v. Palmolive Tower Condos., LLC*, 194 N.E.3d 991, 1017-18 (Ill. App. Ct. Sept. 17, 2021). "A party cannot assert a claim on a contract implied in law if an express contract exists between the parties concerning the same subject matter." *Id.*; *accord B & B Land Acquisition, Inc. v. Mandell*, 714 N.E.2d 58, 63 (Ill. App. Ct. 1999) ("Because the theory [of unjust enrichment] is based upon an implied contract, it has no application when an express contract governs the relationship between the parties.").

In the facts alleged to support his counterclaims, Dexheimer admitted that he provided his services pursuant to a written contract—the 2008 Agreement. *See* Counterclaims [ECF No. 11], at ¶¶ 5.6-5.9, 5.12, 5.15, 5.20-5.24 (pleading the existence of the written contract and alleging its breach). CIC agrees with Dexheimer that a written contract governs the parties' relationship, it just disputes which contract controls—the 2008 Agreement or the asserted 2015 Agreement. *See* Complaint [ECF No. 1-1] at ¶¶ 6, 10-13, and Exhibits A and B. Because it is

undisputed that Dexheimer's employment with CIC was governed by a written contract in the context of the pleadings as they currently stand, the Court agrees with CIC that Dexheimer cannot state a claim for unjust enrichment as a matter of law.

In his response brief, Dexheimer attempts to recast his claim for unjust enrichment as if it had been pled in the alternative to his breach of contract claim. That, however, is not what Dexheimer pled in this counterclaim. As the Court understands the argument in his response brief, Dexheimer contends that his unjust enrichment claim arises in the alternative scenario that the 2015 Agreement does, in fact, supersede the 2008 Agreement and the Court then would have to consider what agreement the parties reached, if any, as to the "separate compensation plan" referenced in the 2015 Agreement. But that argument, as the Court understands it, still assumes the existence of a contract, just a different contract than the contract Dexheimer concedes he signed, a contract that is ostensibly missing a "separate compensation plan." Dexheimer does not allege any facts in his counterclaims to support this argument in his response brief, and he cannot assert a new theory in his response brief that is not supported by his pleading. *See Charleston v. Bd. of Trustees of Univ. of Illinois of Chicago*, 741 F.3d 769, 776 (7th Cir. 2013) (affirming dismissal because the facts upon which plaintiff attempted to rely were not alleged in his complaint). Therefore, the Court grants CIC's motion to dismiss Dexheimer's third counterclaim for unjust enrichment. The dismissal again is without prejudice, and Dexheimer is given leave to replead and cure the deficiencies if he can and should the facts warrant it on or before December 9, 2022.

## CONCLUSION

For all of these reasons, CIC's Motion to Dismiss Dexheimer's Counterclaims [ECF No. 15] is granted in part without prejudice and denied in part. Dexheimer is given leave to attempt to re-plead the counterclaims that are being dismissed without prejudice on or before December 9, 2022.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge


Dated: November 17, 2022