## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CIC PLUS, INC.,

      Plaintiff/Counter-Defendant,

      v.

DARREN DEXHEIMER,

      Defendant/Counter-Plaintiff.

No. 22 C 1523

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff/Counter-Defendant CIC Plus, Inc.'s Motion to Strike Dexheimer's Affirmative Defenses [ECF No. 16]. For the reasons set forth below, CIC's Motion to Strike Dexheimer's Affirmative Defenses [ECF No. 16] is granted in part and denied in part.

## BACKGROUND

Defendant/Counter-Plaintiff Darren Dexheimer ("Dexheimer") was employed by Plaintiff/Counter-Defendant CIC Plus, Inc. ("CIC") as a remote software developer for approximately 13 years from 2008 to 2021. When he was hired in 2008, it is not disputed that Dexheimer and CIC entered into an employment agreement (hereinafter, the "2008 Agreement") that provided, among other things, Dexheimer's compensation would include a 3% share of CIC's profits. *See* Verified Complaint for Declaratory Judgment ("Complaint") [ECF No. 1-1], Ex. A at ¶¶ 6-7. CIC alleges that the parties later re-negotiated the 2008 Agreement and entered into a superseding employment agreement in 2015 (hereinafter, the "2015 Agreement"), which altered

the terms of Dexheimer's compensation package, including the profit sharing, so that Dexheimer was paid based on an annual compensation plan that raised his salary and provided a performance-based bonus. *See* Complaint [ECF No. 1-1], Ex. B at ¶¶ 9-14.

After the employment relationship ended in 2021 (the parties dispute whether Dexheimer resigned or not), Dexheimer requested CIC pay him 3% of its profits from 2015 to 2021 pursuant to the 2008 Agreement. CIC refused Dexheimer's request which laid the groundwork for this lawsuit. Dexheimer disputes CIC's version of the facts, particularly that the parties entered into the 2015 Agreement and re-negotiated the terms of his compensation. *See* Dexheimer's Resp. to Motion to Strike [ECF No. 24], at 1-2. Dexheimer also says that he does not recall the 2015 Agreement and that "the document has a signature that is not the signature Dexheimer used to execute documents." *See* Answer, Affirmative Defenses, and Counterclaims [ECF No. 11], at ¶ 2; *see also* Dexheimer's Resp. to Motion to Strike [ECF No. 24], at 5 ("Dexheimer disputes the authenticity of the document . . . because the signature is suspect and he has no recollection of receiving the document or agreeing to its terms."). Dexheimer says he never forfeited his right to a 3% share of CIC's profits and the purported 2015 Agreement does not say otherwise. *See* Answer [ECF No. 11], at ¶ 2.

CIC filed this action for declaratory relief seeking a declaration that the 2015 Agreement governs the parties' contractual relationship and that CIC does not owe Dexheimer 3% of its profits from 2015-2021. *See* Complaint [ECF No. 1-1]. In response to CIC's complaint, Dexheimer filed his answer and ten affirmative defenses

and also included counterclaims for breach of contract, bad faith, and unjust enrichment. *See* Answer, Affirmative Defenses, and Counterclaims [ECF No. 11]. CIC then filed a Motion to Dismiss Dexheimer's Counterclaims [ECF No. 15] and Motion to Strike Dexheimer's Affirmative Defenses [ECF No. 16]. In this Memorandum Opinion and Order, the Court addresses CIC's Motion to Strike Dexheimer's Affirmative Defenses [ECF No. 16].

## ANALYSIS

An affirmative defense is a defense "that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters." *Riemer v. Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011). Federal Rule of Civil Procedure 8(c) specifically enumerates certain matters that must be pleaded as affirmative defenses, such as assumption of risk, duress, statute of limitations, fraud, waiver, and res judicata, among others. FED. R. CIV. P. 8(c)(1). "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Even under the liberal notice pleading standards of the Federal Rules, an affirmative defense must include direct or inferential allegations as to all elements of the defense asserted. *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F.Supp.2d 897, 904 (N.D. Ill. 2006).

Federal Rule of Civil Procedure 12(f) governs motions to strike affirmative defenses. Pursuant to that Rule, the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. PRO. 12(f).

Generally, motions to strike are disfavored because they "potentially serve only to delay." *Heller Fin., Inc,* 883 F.2d at 1294. Yet, when a motion to strike will "remove unnecessary clutter from the case, [motions to strike] serve to expedite, not delay." *Id.* The court applies a three-part test for examining the sufficiency of an affirmative defense. *Surface Shields, Inc. v. Poly-Tak Prot. Sys., Inc.,* 213 F.R.D. 307, 308 (N.D. Ill. 2003). First, the court determines whether the matter pled actually constitutes an affirmative defense. *Id.* Second, the court considers whether the defense is adequately pled under the pleading standards of Federal Rules of Civil Procedure 8 and 9. *Id.* Third, the court evaluates the sufficiency of the defense pursuant to a standard identical to Rule 12(b)(6). *Id.*

The Seventh Circuit has not yet decided whether affirmative defenses must comply with the pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The district courts within the circuit are divided on this issue. *See Cottle v. Falcon Holdings Mgmt., LLC*, 2012 WL 266968, *1-2 (N.D. Ind. Jan. 30, 2012) (collecting cases). This Court is persuaded by the analysis in the decisions that have declined to apply the plausibility standard to affirmative defenses. *See City of Chicago v. DoorDash, Inc.*, 2022 WL 13827788, at *1 (N.D. Ill. Oct. 21, 2022) (citing *Alyin & Ramtin, LLC v. Barnhardt*, 2022 WL 658786, at *1-3 (N.D. Ill. Mar. 4, 2022)).

**Affirmative Defense No. 1: Failure to State a Claim.** Dexheimer does not object to the Court striking this affirmative defense so long as he is not prevented from filing a Federal Rule 12(c) motion for judgment on the pleadings. Whether

Dexheimer legally may bring a Rule 12(c) motion remains to be seen, but he will not be prevented from filing one based on an argument that he failed to assert an affirmative defense. Therefore, Affirmative Defense No. 1 is stricken without objection.

**Affirmative Defense No. 2: Lack of Standing.** CIC argues standing is not properly plead as a Rule 12(c) affirmative defense. *See, e.g., Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2003 WL 1720073, at *4 (N.D. Ill. Mar. 31, 2003); *Cohn v. Taco Bell Corp.*, 1995 WL 247996, at *5 (N.D. Ill. Apr. 24, 1995). Relying on an Illinois appellate court decision, Dexheimer argues that lack of standing is a recognized affirmative defense under Illinois state law. *See Aida v. Time Warner Entertainment Co., L.P.*, 332 Ill. App. 3d 154 (2002). Federal courts are split on this issue. Some courts find that standing is not an affirmative defense because the plaintiff generally bears the burden of pleading and proving standing, whereas the defendant bears the burden of pleading and proving affirmative defenses. *See DoorDash, Inc.*, 2022 WL 13827788, at *2 (citing *Native Am. Arts, Inc. v. The Waldron Corp.*, 253 F. Supp. 2d 1041, 1044-45 (N.D. Ill. 2003)). Courts are more likely to find that standing is properly pled as an affirmative defense when, as here, the case is a diversity action and Illinois law would have required the defendant to include standing as an affirmative defense. *DoorDash, Inc.*, 2022 WL 13827788, at *2; *see also Acuity Optical Laboratories, Inc. v. Davis Vision, Inc.*, 2014 WL 5900994, at *4 (C.D. Ill. Nov. 13, 2014). For this reason, the Court is not persuaded by CIC's argument, and the motion to strike Affirmative Defense No. 2 is denied.

**Affirmative Defense No. 3: Lack of Justiciability.** A claim is justiciable if it is "properly suited for resolution by the federal courts." *Rucho v. Common Cause,* 139 S. Ct. 2482, 2491 (2019). In this case, CIC seeks a declaration that the 2015 Agreement is the operative agreement between the parties and governs the terms of Dexheimer's compensation and that it does not owe Dexheimer any of its profits from 2015-2021. In response, Dexheimer filed a counterclaim for breach of a different contract—the parties' previous 2008 Agreement. The Court understands Dexheimer's argument to be that CIC's claims are not justiciable because he disputes the authenticity and existence of the 2015 Agreement. The fundamental dispute between the parties is which contract—either the 2008 Agreement or the 2015 Agreement— governs the parties' employment relationship and controls the terms of Dexheimer's compensation, and these claims properly are suited for resolution in this court. Dexheimer seems to confuse the existence of a justiciable dispute with his own view of the merits of CIC's claim. As pled, Affirmative Defense No. 3 is not a legally sufficient affirmative defense, and it is stricken.

**Affirmative Defense No. 4: Waiver.** Dexheimer alleges that "CIC waived any right to deny promised compensation to Dexheimer." *See* Affirmative Defenses [ECF No. 11], at ¶ 3.4. An affirmative defense asserting waiver must contain "the specific elements required to establish the defense." *Raquet v. Allstate Corp.*, 348 F. Supp. 3d 775, 786 (N.D. Ill. 2018) "Waiver is the voluntary and intentional relinquishment of a known right inconsistent with an intent to enforce that right." *R & B Kapital Dev., LLC v. North Shore Cmty. Bank & Trust Co.*, 832 N.E.2d 246, 255

(Ill. Ct. App. 2005). "The party claiming the implied waiver has the burden of proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights." *Id.*

Dexheimer has failed to plead the elements of waiver, and his argument in response to CIC's motion to strike the affirmative defense is nonsensical. Dexheimer contends that CIC's "known right" was its "right to pay Dexheimer less than the three percent profits he was owed" and that CIC demonstrated an intent to waive that right by "accepting his work product." *See* Dexheimer's Resp. to Motion to Strike [ECF No. 24], at 5-6. This is clever, but it does not make any sense. Dexheimer alleges he had a contractual right pursuant to the 2008 Agreement to receive 3% of CIC's net profits. CIC alleges that contractual right was negated or superseded by the 2015 Agreement. If Dexheimer is right, the 2008 Agreement controls. If CIC is right, the 2015 Agreement controls. There are no factual allegations to support an argument that CIC acquired any "right" to pay Dexheimer less than the 3% profits and then knowingly and intentionally waived that right. Because Dexheimer has failed to sufficiently plead the elements of waiver, Affirmative Defense No. 4 is stricken.

**Affirmative Defense No. 5: Unjust Enrichment.** Unjust enrichment is not a proper affirmative defense, and Dexheimer does not respond to the case law cited by CIC for that settled proposition. *See DoorDash, Inc.*, 2022 WL 13827788, at *5; *Warrior Ins. Group, Inc. v. Insureon.com, Inc.*, 2000 WL 1898867, at *1 (N.D. Ill. Dec. 29, 2000) (granting motion to strike). The Court agrees with CIC that unjust

enrichment is not a proper affirmative defense, and therefore, Affirmative Defense No. 5 is stricken.

**Affirmative Defense No. 6: Fraud/Misrepresentation.** Dexheimer alleges that "CIC engaged in fraud and bad faith and unfair dealing in denying promised compensation to Dexheimer...." *See* Affirmative Defenses [ECF No. 11], at ¶ 3.6. CIC argues that Dexheimer's fraud and misrepresentation defense does not plead all of the elements of fraud. To plead fraud, Dexheimer must allege: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce Dexheimer to act; (4) reliance on the statement; and (5) damages resulting from such reliance. *See U.S. v. Walgreen Co.*, 417 F. Supp. 3d 1068, 1096 (N.D. Ill. 2019). In addition, an affirmative defense alleging fraud also is subject to the heightened pleading requirements of Rule 9(b), which requires fraud to be "stated with particularity." FED. R. CIV. P. 9(b); *see also Franklin Capital Corp. v. Baker & Taylor Entm't, Inc.*, 2000 WL 1222043, at *4 (N.D. Ill. Aug. 22, 2000). The allegations must include "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* (quotations omitted).

The Court agrees with CIC that that Dexheimer has not pled the elements of fraud, much less the specifics required by Rule 9(b). Dexheimer asserts only that he was promised a share of profits but then was denied those profits. *See* Affirmative Defenses [ECF No. 11], at ¶ 3.6. He does not allege any false statement of material fact (much less its form, time, place, and content), who made the statement, or that

8

he relied on a statement. Dexheimer's alternative allegations that CIC "fraudulently induced" his agreement to the 2015 Agreement or that CIC circumvented his "access to justice by failing to have a registered agent and then refusing to accept service" also fail to sufficiently plead an affirmative defense for fraud or misrepresentation. In his response to CIC's motion, Dexheimer points to other allegations in his answer in an attempt to supplement his affirmative defense, but Dexheimer still does not identify any false statement of material fact or any of the other elements of fraud. Therefore, Affirmative Defense No. 6 is stricken.

**Affirmative Defense No. 7: No meeting of the minds, no consideration, and lack of material terms.** Dexheimer asserts no meeting of the minds with CIC, no consideration, and a lack of material terms as affirmative defenses to CIC's request that the Court declare the 2015 Agreement governs its employment relationship with Dexheimer such that Dexheimer is not entitled to any share of CIC's profits from 2015 through 2021. These are bare-boned conclusory statements in response to CIC's request for a declaration that the 2015 Agreement is a valid and enforceable contract. Dexheimer does not allege any additional facts to support his claim that there was no meeting of the minds, no consideration, or a lack of material terms that would support his claims; he simply disputes the content of the 2015 Agreement and its validity as the basis for CIC's action seeking a declaratory judgment.

In the Court's view, this affirmative defense is simply a restatement of Dexheimer's denial in his answer to CIC's complaint that the 2015 Agreement is not

a valid contract. *See* Answer [ECF No. 11], at ¶ 20 ("The 2015 Agreement is not a valid contract because there was no meeting of the minds, no consideration, and was fraudulently induced."). Because Dexheimer already put these matters in issue by denying certain allegations in CIC's complaint, he cannot raise them again as an affirmative defense. *See DoorDash, Inc.*, 2022 WL 13827788, at *5 (citing *Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 804 (N.D. Ill. 2000)). The Court agrees with CIC that this affirmative defense is improper and redundant and should be stricken. Therefore, Affirmative Defense No. 7 is stricken.

**Affirmative Defense No. 8: Res Judicata/Collateral Estoppel.** Dexheimer does not object to the Court striking this affirmative defense because the action filed in the State of Washington on which it was based has been dismissed. Therefore, Affirmative Defense No. 8 is stricken without objection.

**Affirmative Defense No. 9: Parole Evidence Rule.** Dexheimer asserts the parole evidence rule as an affirmative defense to CIC's claim because he appears to contend that the 2015 Agreement cannot modify the 3% profit sharing provision of the 2008 Agreement since the 2015 Agreement does not explicitly mention the profit sharing provision of the 2008 Agreement and the 2008 Agreement states it cannot be modified other than in writing. Affirmative Defenses [ECF No. 11], at ¶ 3.9. It, frankly, is difficult to understand what Dexheimer is arguing here. The 2015 Agreement indisputably is in writing, whether or not Dexheimer believes it is a valid, enforceable contract that changed his compensation arrangement with CIC. The Court, however, recognizes that the 2015 Agreement says Dexheimer's "salary or

other compensation will be set forth more fully in a separate compensation plan" (Complaint [ECF No. 1-1], Ex. B at ¶ 4.1), and CIC points to no separate written compensation plan denominated as such. CIC's argument seems to be that the "separate compensation plan" referenced in the 2015 Agreement was the annual meeting at which CIC and Dexheimer discussed his salary for the upcoming year and his bonus for the past year. *See* Complaint [ECF No. 1-1], at ¶ 13 ("Dexheimer's annual compensation plan was addressed and agreed annually, typically at the beginning of June, when his prospective salary (including any raise) and his bonus for the previous year were determined."). This apparently is the basis for Dexheimer's "parole evidence" defense—that the "separate compensation plan" component of the 2015 Agreement is unenforceable because of the parole evidence rule notwithstanding that the 2015 Agreement itself is in writing.

CIC argues that this affirmative defense should be stricken as unnecessary clutter because it simply repeats the denials asserted in Dexheimer's answer. *See* Answer [ECF No. 11], at ¶¶ 11-12; *see also Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1041 (N.D. Ill. 2014). If the Court understands what Dexheimer is saying, however, this defense incorporates Dexheimer's denials into legal packaging—albeit legal packaging that may or may not hold any sway at the end of the day. In addition, it does not appear that striking this affirmative defense will materially affect discovery in this case since there are no new facts that need to be explored for Dexheimer to pursue it whether it ultimately has any legal significance or traction, or not. While the Court is not sure this is a valid or necessary

11

affirmative defense, it also sees no harm in allowing it to stand for now. Therefore, CIC's request to strike Affirmative Defense No. 9 is denied.

**Affirmative Defense No. 10: Breach of Contract.** CIC argues that this affirmative defense is duplicative of Dexheimer's counterclaim for breach of contract. The Court agrees with CIC. CIC is suing Dexheimer based on the parties' 2015 Agreement, but Dexheimer disputes the existence of that Agreement. In response, Dexheimer alleges breach of a different contract—the 2008 Agreement. It is not clear Court how Dexheimer's claim for breach of the 2008 Agreement functions as an affirmative defense to CIC's claim for breach of the 2015 Agreement. In any event, however, Dexheimer has asserted breach of the 2008 Agreement as a counterclaim, so this affirmative defense will not affect the scope of discovery or the parties' legal positions in this case. Further, it is not clear how Dexheimer's alleged breach of a different contract would be a valid affirmative defense to CIC's declaratory judgment lawsuit on the 2015 Agreement. Therefore, Affirmative Defense No. 10 is stricken.

## CONCLUSION

The Court finds, except in two instances, that Dexheimer's affirmative defenses are meritless for the reasons discussed above. They are nothing but bare bones conclusory allegations or restatements of Dexheimer's denials in his answer and/or claims asserted in his counterclaims that are not properly asserted as affirmative defenses, or they fail to sufficiently allege the necessary elements of the defense as pled. Accordingly, CIC's Motion to Strike Dexheimer's Affirmative Defenses [ECF No. 16] is granted in part and denied in part. The Court grants the

Motion to Strike [ECF No. 16] as to Affirmative Defenses Nos. 1, 3, 4, 5, 6, 7, 8, and 10, and those defenses are stricken. The Court denies the Motion to Strike [ECF No. 16] as to Affirmative Defenses Nos. 2 and 9.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 17, 2022

13